THOMAS NISHI, ESQ.
State Bar #82522
725 S. Figueroa Street, 31st Flr.
Los Angeles, California 90017
Telephone: (213) 629-9066
Facsimile: (213) 629-9022
E-mail: tommy5850@aol.com

Attorney for Defendant
ROBERTO MEINAS MACIAS

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. CR 15-707-R-1 |
| | ) | |
| Plaintiff, | ) | POSITION RE: SENTENCING OF |
| | ) | DEFENDANT ROBERTO MEINAS MACIAS; |
| vs. | ) | EXHIBITS |
| | ) | |
| ROBERTO MEINAS MACIAS, et al., | ) | Hearing Date: July 18, 2016 |
| | ) | Time: 10:00 a.m. |
| Defendant. | ) | |
| | ) | |
| | ) | |
| _____ | ) | |

     TO THE HONORABLE MANUAL L. REAL – JUDGE PRESIDING, ASSISTANT

UNITED STATES ATTORNEY PATRICIA DAFFODIL TYMINSKI, CHIEF PROBATION

OFFICER MICHELLE A. CAREY AND TO THE CLERK OF THE ABOVE-ENTITLED

COURT:

     PLEASE TAKE NOTICE that Defendant Roberto Meinas Macias, by and

through his counsel of record, respectfully submits his Position Re:

Sentencing for the Court's consideration.

Date: July 11, 2016                      ___/S/_____
                                            Thomas Nishi, Esq.
                                         Attorney for Defendant
                                         Roberto Meinas Macias

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**INTRODUCTORY STATEMENT**

Defendant Roberto Meinas Macias appears for sentencing after pleading guilty, pursuant to a written plea agreement (hereinafter "Plea Agreement"), to count five of the indictment in *United States v. Roberto Macias*, CR No. 15-707-R, which charged defendant with distribution of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1),(b)(1)(A)(doc. #71).  The essential terms of the Plea Agreement contain the following provisions and stipulations:

1.    The base offense level is 30 (U.S.S.G. § 2D1.1(c)(6)(Plea Agreement, ¶13); and

2.    A three-level reduction for acceptance of responsibility (U.S.S.G. §3E1.1(a),(b))(Plea Agreement, ¶3(d)).

This leaves a total offense level of 27.  With a criminal history category I (PSR, ¶50), as calculated by the probation officer, and which was based upon Mr. Macias' criminal history score of 1 (PSR, ¶49), the resulting guideline range is 70-87 months.

Furthermore, the Plea Agreement, pursuant to the factors set forth in 18 U.S.C. §3553 (a)(1), (a)(2), (a)(3), (a)(6), and (a)(7), reserves the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines (Plea Agreement, ¶15).

The United States Probation Office filed a Pre-Sentence Report herein "PSR"), on June 13, 2016 (doc. #91).  The probation officer who prepared the PSR, computed a different total offense level of 33. (PSR, ¶¶27-42).  Utilizing the finding of the probation officer that

Mr. Macias criminal history score as 1 (PSR, ¶49), which resulted in a criminal history category I (PSR, ¶50), the resulting guideline range stated in the PSR is 135-168 months.

## II.

### DIFFERENCES BETWEEN THE PLEA AGREEMENT

### AND THE PSR

The Indictment in this case centers around an approximate two-month period of time in December of 2013 and January of 2014. The quantity of drugs described in the indictment came from two events: the distribution of drugs occurring on January 10, 2014, amounting to 109.8 grams; and on January 19, 2014, amounting to 41 grams. These quantities of methamphetamine resulted in the parties agreeing in the plea agreement to a base offense level of 30.

While the govt. and Mr. Macias focused the scope of criminality for this period of time in their plea agreement, the probation officer included a later event, the execution of search warrant in April 16, 2014, conducted by the Hawthorne Police Department.[1] The drugs discovered by the Hawthorne Police search added 10 kilograms of methamphetamine more than what is set forth as the plea agreement. The probation officer added these narcotics to her guideline calculation

---

[1]"On April 16, 2014, the Hawthorne Police Department executed a search warrant at **Macias'** residence and vehicle. Officers arrested **Macias** and Ramiro Romero-Gonzalez. During the search, officers recovered the following items: approximately 75.6 pounds of methamphetamine was found in his vehicle; approximately 3 pounds of marijuana were found in his living room; approximately 14 grams of cocaine; 14 grams of methamphetamine, and two firearms were found in his bedroom." (PSR, ¶23.)

1  as she viewed these events as relevant conduct.[2]  Specifically, the

2  probation officer held Mr. Macias accountable for an equivalent total

3  quantity of marijuana of 23,016 kilograms.  The breakdown of the

4  quantities were set forth in the PSR.  This quantity was based upon

5  the possession for distribution of (1) 109.8 grams of methamphetamine

6  on January 10, 2014; (2) 41 grams of methamphetamine on January 19,

7  2014; and (3) 10 kilograms of methamphetamine on April 16, 2014.

8  (PSR, ¶ 31).  An additional two points were added to the offense level

9  for possession of a firearm on April 16, 2014. (PSR, ¶33).  The

10 resulting adjusted offense level is 36.  (PSR, ¶38).  Three points

11 were deducted for acceptance of responsibility.  (PSR, ¶¶40, 41).  The

12 total offense level is 33.  (PSR, ¶42).

13     For the drugs that were found by the Hawthorne Police Department

14 on that date, Mr. Macias was given a state sentence of 12 years on

15 February 25, 2015, by the Los Angeles County Superior Court.[3]

16     Additionally, the probation officer, pursuant to U.S.S.G. §

17 2D1.1(b)(1), concludes that a two-level upward departure is warranted

18 because of two firearms discovered by the Hawthorne Police Department

19 in that same search of Mr. Macias' residence on April 16, 2014. (PSR,

20 ¶33).

21     In summary, under the plea agreement and before any additional

22 specific offense characteristic, adjustment, and departures are

23 considered, the total offense level and guideline range, taking into

24

25     [2]"Pursuant to USSG§§ 1B1.3(a)(2) and 4A1.2(a)(1), this conviction is considered to be part
of the instant offense (i.e., relevant conduct)." (PSR, ¶23, fn. 4).

26

27     [3]"On February 25, 2015, **Macias** pleaded guilty to a violation of 11378 H&S: Possession for
sale of methamphetamine and admitted the methamphetamine weighed over 10 kilograms, to a
weight enhancement pursuant to HS 11370.4(b)(3).  He was convicted in Los Angeles County
Superior Court, Case No. BA423768, and sentenced to sentenced to 12 years prison. [Footnotes
28 omitted]." (PSR, ¶ 23.)

account 3 levels for early acceptance of responsibility, and a criminal history I, is 27, is a sentencing range of 70-87 months. This differs from the PSR.  According to the calculations set forth in the PSR, and as stated above, the total offense level is 33 (PSR, ¶42), resulting in a range of 135-168 months.


### III

### ISSUES

1.   What is the appropriate sentence for Mr. Macias?

2.   How should the sentence of Mr. Macias be run in light of his
      12 year state sentence in state court?


### IV.

### APPROPRIATE LENGTH OF SENTENCE

It should be first recognized that Mr. Macias is facing a five-year mandatory-minimum sentence. (PSR, ¶2, fn. 1).  It should also be pointed out that while the Plea Agreement speaks of a ten-year mandatory-minimum sentence, the parties acknowledge that this was in error. (*Infra*).

It is respectfully submitted that the mandatory-minimum sentence of five-year (60 months) is sufficient.  Should this court elect to increase the sentence to coincide with the Plea Agreement entered into by the parties, a low end sentence of 70 months is also viewed as sufficient.  This is in contrast to the probation office's calculation of a term of imprisonment of 135-168 months, which utilized the provisions of the U.S.S.G., and which should be viewed as overly harsh and unjust.

**A.    The Court Must Impose a Sentence Sufficient, but not Greater than Necessary to Accomplish the Goals of Sentencing**

As this Court is aware, the Sentencing Guidelines are no longer mandatory, *United States v. Booker*, 543 U.S. 220 (2005), and a "district court may not presume that the Guidelines range is reasonable." *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (en banc); *See Rita v. United States*, 551 U.S. 338, 351 (2007). The Guidelines are entitled to no more weight than any of the other Section 3553(a) factors. *Carty*, 520 F.3d at 991; *United States v. Cantrell*, 433 F.3d 129, 1279-80 (9th Cir.2000).

In the post-*Booker* world, this Court is required to fashion a sentence that is appropriate considering all of the section 3553(a) factors. *Gall v. United States*, 552 U.S. 38, 49-50 (2007). The "overarching provision" of Section 3553(a) – the guiding principle – is that courts should "'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing." *Kimbrough v. United States*, 552 U.S. 85, 101 (2007).

Among the factors evaluated under section 3553(a) are, *inter alia,* "(1) the nature and circumstances of the offense and the history and characteristics of the defendant; and (2) the need for the sentence imposed." In assessing the need for the sentence imposed, the Court considers - "the seriousness of the offense," the promotion of "respect for the law," and providing "just punishment for the offense," "adequate deterrence to criminal conduct," "protection of the public from further crimes of the defendant." 18 U.S.C. §3553(a).

///

///

///

**B.   Relevant Factors in the Instant Case**

Mr. Macias does not dispute the seriousness of his conduct, nor is he attempting to excuse his actions.   There are, however, factors set forth in 18 U.S.C. §3553(a) that he wishes the Court to consider.

**1.   History and Characteristics of Defendant**

*a.   Family History as Factor Contributing to his Offense Behavior*

In the context of determining an appropriate sentence, the most relevant and significant aspect of Mr. Macias' history is his family and childhood background.   Mr. Macias' personal and family history are intertwined in the offense and ultimately its outcome.   Mr. Macias' childhood was severely impacted by a violently abusive father who constantly beat Mr. Macias mother. (PSR, ¶58).   Additionally, the father did provide well for his family, only contributing for the mortgage payment and nothing else.   Without the proper parental guidance, it should not be surprising that Mr. Macias had to drop out of high school during the 9th grade and start working to support his family. (PSR, ¶76).   Left without fatherly advice from his father, and limited financial resources, he unfortunately elected to make poor choices in his life to survive, and to support his family.   The animosity that Mr. Macias has towards his father, still exists, having been expelled from his father's house in 2012, which understandably coincides with the beginning of his criminal history.

**2.   Just Punishment**

Among the factors identified in §3553(a)(2) is the necessity for the sentence imposed to provide just punishment.   Mr. Macias

recognizes that the interests of justice require that he suffer
punishment as a social sanction for his role in the instant offense.
He hopes that the Court temper its punishment with wisdom,
understanding and the enumerated statutory factors listed.

In coming to a just and reasonable sentence, it is
submitted that the Court should consider that whatever sentence is
imposed will subject him to his first prison commitment.  Mr. Macias
has never spent a day in either a state or federal prison.  This is
not to say that Mr. Macias has a pristine criminal record.  It should
merely be recognized that his criminal record is devoid of physical
crimes and reflects an individual who is not beyond redemption and
rehabilitation.

In viewing the guideline sentence recommended in the PSR, the
number of months far exceeds that which is necessary and just given
that this will be Mr. Macias' first encounter with the prison system.
Which recognizing that some prison time is in order, the mandatory-
minimum sentence will serve the purpose of a just and adequate
sentence without further jeopardizing any hope that Mr. Mendez can re-
adjust his lifestyle to the point where he could be a very useful
member of society.


**3.    Rehabilitation**

In addition to promoting respect for the law, and to provide just
punishment for the offense, the statutory scheme contemplates
rehabilitation as an important factor in the sentencing calculus.
Here, more than anything else, the love and respect he has garnered
from his family and friends help ensure that Mr. Macias' criminal
conduct will be behind him.  The letters submitted by friends and

1  family members (see Exhibit A), gives insight to Mr. Macias'

2  character.  It is clearly evident that Mr. Macias has admirable

3  redeeming qualities that make him a great father, relative and friend.

4  Should the court impose the mandatory-minimum sentence of 5 years, it

5  gives him a chance to alter his life.  This change in character and

6  respect for the law can be accomplished within this 5-year time frame.

7      While this court has undoubtedly heard many defendants' insincere

8  claim of rehabilitation, hope for rehabilitation may be truly genuine

9  for Mr. Macias.  While the future cannot be predicted, because Mr.

10  Macias currently has the strong the love and affection of his family,

11  at this juncture, his hope for full rehabilitation appears to be

12  better than most.  These past several months while he has been apart

13  from this daughter, and recently born granddaughter, have been

14  extremely difficult for Mr. Macias.  Now with the future hope of

15  having them back together, with a job that his trucking skills should

16  help him secure, provides him with the opportunity to financially and

17  emotionally care for them.  There is now an extremely strong incentive

18  for him to never stray from the "lawful path."

19

20                              **V.**

21         **BASED UPON THE INCLUSION OF THE EVENTS ON**

22      **APRIL 16, 2014 AS RELEVANT CONDUCT, THE SENTENCE**

23      **IMPOSED SHOULD BE REDUCED BY AND RUN CONCURRENT**

24              **TO MR. MACIAS' STATE SENTENCE**

25

26      As discussed above, state charges were filed against Mr. Macias

27  arising out of these seizures of drugs and firearms by Hawthorne

28  Police Department on April 16, 2014 in the case of *People v. Macias,*

Case No. BA423768.  Also, as noted above, the probation officer in this case viewed those events as "relevant conduct."  Finally, as noted above, Mr. Macias pleaded guilty and is currently serving a twelve-year sentence in state prison. (PSR, ¶ 23).

The Sentencing Guidelines advises and the PSR notes that any sentence imposed in this case should be reduced by and run concurrent to the sentence Mr. Macias is serving in state custody for the April 16, 2014 charges, *People v. Macias,* Case No. BA423768.  U.S.S.G. §5G1.3(b)(1) and (2), PSR, ¶ 93.  Sections 5G1.3(b)(1) and (2) provide:

> (b)  If subsection (a) does not apply, and a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction under the provisions of subsections (a)(1), (a)(2), or (a)(3) of § 1B1.3 (Relevant Conduct), the *sentence* for the instant offense shall be imposed as follows:
>
> > (1)  the court shall adjust the *sentence* for any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the *federal sentence* by the Bureau of Prisons; and
> >
> > (2)  the *sentence* for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment.

U.S.S.G. §§5G1.3(b)(1) and (2); *see also United States v. Drake,* 433 F.3d 1438, 1440-1441 (9th Cir. 2000)(even where court must impose mandatory minimum, time spent in state custody for same relevant conduct must be deducted from federal sentence).

As indicated in this sentencing memorandum, the appropriate sentence under *Booker* is 60 months.  Under §5G1.3(b)(1), this Court should reduce that sentence by the 27 months Mr. Macias has already served in state custody and run the federal sentence concurrently to the state sentence.  As the United States Supreme Court explained in

1  *Witte v. United States,* 515 U.S. 389 (1995):

2          *§ 5G1.3 of the Guidelines* attempts to achieve some coordination
           of sentences imposed in such situations with an eye toward
3          having such punishments approximate the total penalty that
           would have been imposed had the sentences for the different
4          offenses been imposed at the same time (*i. e.,* had all of the
           offenses been prosecuted in a single proceeding). See *USSG §*
5          *5G1.3*, comment., n. 3. . . . *§ 5G1.3* operates to mitigate the
           possibility that the fortuity of two separate prosecutions
6          will grossly increase a defendant's sentence. If a defendant
           is serving an undischarged term of imprisonment "resulting
7          from offense(s) that have been fully taken into account [as
           relevant conduct] in the determination of the offense level
8          for the instant offense," *§ 5G1.3(b)* provides that "the
           sentence for the instant offense shall be imposed to run
9          concurrently to the undischarged term of imprisonment." . . .
           Significant safeguards built into the Sentencing Guidelines
10         therefore protect petitioner against having the length of his
           sentence multiplied by duplicative consideration of the same
11         criminal conduct.

12  *Id.,* at pp. 404-405, *see also United States v. Kimble,* 107 F.3d 712,

13  714-715 (1997)(*Section 5G1.3(b)* was adopted to address the "unfairness" that

14  would result from receiving a second sentence for activities which were

15  considered as relevant conduct in a prior proceeding.).

16

17                              **CONCLUSION**

18

19          Based upon the arguments set forth above, it is respectfully

20  requested that this Court find that the appropriate sentence is 60

21  months.  Mr. Macias has already served 27 months in state custody in

22  *People v. Macias,* Case No. BA423768 for conduct included in this

23  sentence.  Consequently, Mr. Macias should be sentenced to 33 months,

24  a special assessment of $100, no fines based upon Mr. Macias'

25  inability to pay, and five years of supervised release.  This sentence

26  should run concurrently with the twelve-year sentence imposed by the

27  state in *People v. Macias,* Case No. BA423768.

28  ///

Date: July 11, 2016

                                        _/S/_____
                                          Thomas Nishi, Esq.
                                        Attorney for Defendant
                                          Roberto Meinas Macias

# EXHIBIT A

July 07, 2017

Your Honour,

My name is Jocelyn Vazquez, I am the oldest of four siblings. Currently working as an accountant's assistant for Erra Brother's DBA Stone Crafters and going to East Los Angeles Community College part time.

Roberto asked me to write a character reference and I am writing today to encourage the leniency in the sentencing of my friend Roberto Macias.

I have known Roberto approximately 4 years and I understand that he is coming before your court because he is being charged with conspiracy of methamphetamines. However, the Roberto that I have come to know is not the same man who is being sentenced today. My hope is that through this letter I am able to make you see Roberto through my eyes and offer a different perspective. I understand that given the circumstances this might be difficult to believe, but Roberto is a good moral person.

Roberto is a hard working man, a devoted and loving father. He was willing to work extended shifts beginning at 5 A.M. and stayed long hours in order to provide for his only daughter. His relationship with his daughter was unique and precious. He wasn't only there for her as a financial provider, but he was also a friend who she could depend on. He has always supported her emotionally and encouraged her to make school her first priority.

Roberto was always dependable. Over time, he became someone who I now consider part of my family. I recall an instance when my family and I were moving. My father was not around at this time and we had to do everything alone. My mom fractured her arm while moving a dresser. I mentioned the accident to Roberto and without hesitation he came over and helped me pack, move and provided me the support that I needed at the time. He was always helpful with something as simple as giving me a ride, fix my car, and even lending me money. He never expected anything in return from despite the countless times that I sought his help. Roberto's incarceration time has made me not only miss a friend, but older brother which I never had.

I know being away from his family, daughter, and not being able to hold his grandson is devastating him. I am convinced and confident that Roberto is willing to move forward in a positive direction to become a better person, father and now grandfather. I know that all he needs is a second chance to prove that he is remorseful. He has the love and support of his family that will help him through and make reparations to those he has hurt.

It is my sincere hope that through this letter I was able to make you see Roberto as the father, the friend, the dependable, hardworking and loving person that I know him to be.

Best Regards, Jocelyn Vazquez

Jahpe V.

Maria Del Carmen Anaya
1430 W Temple St
Los Angeles, CA 90026

Tuesday, July 05, 2016

Dear Sir or Madam:

I am writing to recommend Roberto Meinas Macias, whom I have known for 7 years, as an acquaintance and friend. During that time I have known Roberto too many capacities, one being a dedicated and sole provider to his only daughter Sarah. He is an intelligent, capable, and personable man.  He is always quick on his feet, with sensible reactions in all the circumstances I've seen him in. I feel confident in saying that he is capable of handling any situation with thoughtfulness and maturity.

Roberto has always been a very hard working man who dedicated his life to making sure his was always able to provide for his daughter. He woke up early in the morning to put in his long hours of work. Now he has a grandchild that he hasn't had the opportunity to hold, love, educate, nor even spoil as grandparents should.

I have no doubt that Roberto can become a valuable asset to society by being a module citizen to his family, friends and society. I give my highest recommendation to consider Roberto to have his time served. If I can provide any further assistance, do not hastate to contact me to my cell (213)425-6125 or via email m.anaya25@yahoo.com.

Sincerely,

Maria Del Carmen Anaya
Child Support Officer II
5770 S Eastern Ave
Commerce, CA 90040
(323)869-3275



**THOMAS** EMPLOYMENT LAW ADVOCATES
A PROFESSIONAL CORPORATION

9200 W. Sunset Blvd
Suite 804
West Hollywood
California 90069

PH 310.276.5297
FAX 323.443.1736

www.ThomasEmploymentLaw.com

July 7, 2016

To the Sentencing Judge,
Unites States District Court, Central District of California

My name is Marisol Reyes. I am the business manager for Thomas Employment Law Advocates, APC, a defense firm specializing in employment law located in West Hollywood.

Roberto asked me to write a character reference letter for him and I am very pleased to do so.

It is my understanding that Roberto is appearing before your court due to charges of "conspiracy to sale methamphetamine".

However, I strongly believe in Roberto and in his ability to move towards a promising future despite his past mistakes. It is my hope that through this letter I can convey that to you.

Roberto is a kind and devoted father who has used his time to reflect and recognize the offense he has committed. Throughout the time of his incarceration he has been a model inmate. He is not violent nor has he caused any additional harm. He has been respectful to his fellow inmates, guards and abided by the rules set forth in the institution he is held. He has focused on trying to rectify the wrong he has committed with the purpose to return to his family.

In the time that I have known Roberto, he has been an encouragement to me and those he comes in contact with him. It may be difficult to believe but he is a counselor of sorts. When I lost my father due to complications of diabetes. My mother, my son and I were severely affected by my father's sudden death. In our grief for his loss, we fell into depression. My mother and I not only lost his presence but the financial stability that a loving father provides. Subsequent to this, we lost our home and had to move into my sister's one-bedroom apartment. Through all my turmoil, Roberto never let me give up. He encouraged me to move forward and to seek help. He made me stronger and reminded me to have faith. He served as a light at the end of my tunnel and with his help along with my mother and son I was able to slowly put back the pieces. I have seen that same pain in Roberto's only daughter. Granted not in the same scale as a death, but a loss none the less. The loss of the father, the provider and friend he is to her.

For this reason, it is my strong belief that Roberto sincerely regrets having committed this offense. When I spoke with him, he expressed his remorse to me and he understands that he must be accountable for the consequences of his actions.

I will continue to support Roberto and I wish him the best outcome for this case.



**THOMAS** EMPLOYMENT LAW ADVOCATES
A PROFESSIONAL CORPORATION

Should you need to verify any of my statements above, please feel free to call me at (310) 594-1813.


THOMAS EMPLOYMENT LAW ADVOCATES,
A PROFESSIONAL CORPORATION

MARISOL REYES, Friend

Sarah Macias
15721 S. Frailey Ave.
Compton, CA 90221

Tuesday, July 5, 2016

Dear Sir or Madam,

I am writing to urge leniency in the sentencing of my father Roberto Macias.

My father and I are both aware of the gravity of the crime he was convicted of, but it is still hard for me to wrap my head around. This is not the man I know, and I'd like to give you a perspective that shows that he is more than the sum of his actions on the day he committed the crime.

Roberto Macias has always been there for me and my family and many other people. I honestly dont think I would have gotten through school without my father pushing me and helping me with homework and projects. I now have a child that is a year old and has not gotten to spend time with his grandfather like hes suppose too.

Roberto Macias is a hard working man and has never let me down. Every job hes has had hes loved and all his bosses are always calling him to remind him he can always go back because they will always have a space for him because hes a hard working and trustworthy employ. I hope you are willing to give my father a second chance with time severed.

Sincerely,
Sarah Macias